**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **JOANN MURRAY** | ) | |
| 43471 Postrail Square | ) | |
| Ashburn, Virginia  20147 | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| **CAMBRIDGE HOLDINGS LLC** | ) | |
| | ) | |
| Serve: Corporation Service Company | ) | |
| Bank of America Center | ) | |
| 111 East Main Street | ) | |
| Richmond, Va. 23219 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| **RANDY S. JAEGLE** | ) | |
| 8391 Old Courthouse Road, Suite 210 | ) | |
| Vienna, Virginia  22182 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| **BENJAMIN R. ELDRIDGE, JR.** | ) | |
| 8391 Old Courthouse Road, Suite 210 | ) | |
| Vienna, Virginia  22182 | ) | |
| | ) | |
| *Defendants.* | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff, JoAnn Murray ("Plaintiff" or "Ms. Murray"), by and through undersigned counsel, hereby files this Complaint against Defendants Cambridge Holdings LLC ("Defendant" or "Cambridge"), Randy S. Jaegle ("Mr. Jaegle"), and Benjamin R. Eldridge, Jr. ("Mr. Eldridge") for violations of, and retaliation under, the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

1

## PARTIES AND JURISDICTION

1.      Ms. Murray was formerly employed by the Defendant as an administrative assistant performing clerical duties.  Ms. Murray resides at 43471 Postrail Square, Ashburn, Virginia, 20147.

2.      Cambridge is a limited liability corporation organized under the laws of the Commonwealth of Virginia with its principal place of business located at 8391 Old Courthouse Road, Suite 210, Vienna, Virginia, 22182.   Cambridge provides commercial real estate services to institutions, investment partnerships and individuals including development, investment management, asset property management, leasing, construction management and asset/portfolio restructures.

3.      At all times relevant to this matter, Mr. Jaegle and Mr. Eldridge were officers of Cambridge.

        a.   At all times relevant to this matter, Mr. Jaegle and Mr. Eldridge had the power to hire, fire, suspend, and otherwise discipline Plaintiff.

        b.   At all times relevant to this matter, Mr. Jaegle and Mr. Eldridge supervised the work duties of Plaintiff to ensure her work was of sufficient quality.

        c.   At all times relevant to this matter, Mr. Jaegle and Mr. Eldridge set and controlled Plaintiff's work schedule or had the power to set and control Plaintiff's work schedule.

        d.   At all times relevant to this matter, Mr. Jaegle and Mr. Eldridge set and determined Plaintiff's rate and method of pay or had the power to set and determine the rate and method of Plaintiff's pay.

    e.  At all times relevant to this matter, Mr. Jaegle and Mr. Eldridge controlled and were in charge of the day-to-day operations of Cambridge.

4.    The Court has jurisdiction over the subject matter and the parties to this action pursuant to 28 U.S.C. § 1331 because Ms. Murray's claims arise under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, federal law, and supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

5.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Ms. Murray's claims occurred in the Eastern District of Virginia, and in this judicial division.

## FACTUAL ALLEGATIONS

6.    Ms. Murray worked for Cambridge for over 19 years as an administrative assistant performing a variety of clerical tasks which she performed well until her termination on July 13, 2017.

7.    At all times, Ms. Murray proved to be an outstanding employee who was routinely recognized by her superiors and colleagues as a dedicated employee.

8.    As an administrative assistant, Ms. Murray received an hourly wage of $31.28 per hour from July 13, 2014 to December 31, 2014 and worked at least 32.5 hours of overtime in that time period.

9.    Ms. Murray received an hourly wage of $31.96 per hour from January 1, 2015 to December 31, 2015 termination and worked at least 71.75 hours of overtime in that time period.

10.    Ms. Murray received an hourly wage of $32.36 per hour from January 1, 2016 to the time of her termination and worked at least 533.5 hours of overtime in that time period.

11.    Ms. Murray was treated as an exempt employee under the FLSA by Defendant.

12.     Ms. Murray regularly worked in excess of 40 hours during her tenure as Cambridge.

13.     Despite working in excess of 40 hours per week, Ms. Murray never received any overtime compensation.

14.     Ms. Murray did not manage other employees and her work was not related to the management of the Defendant, did not primarily involve the exercise of independent judgment and discretion about a matter of significance, did not have the authority to commit the Cambridge to matters of financial significance, and she did not otherwise qualify for any exemption to the requirement to pay overtime under the FLSA.

15.     Defendants' failure to pay Plaintiff overtime, as required by the FLSA, was willful, intentional, and in bad faith.

## COUNT I

### Violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

16.     Ms. Murray incorporates the allegations contained in paragraphs 1– 13 above as though fully set forth herein.

17.     Ms. Murray is entitled to overtime pay under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.

18.     Section 207(a)(1) of the FLSA provides that "no employer shall employ any of his employees…for a workweek longer than forty (40) hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one-and-one-half times the regular rate at which he is employed."

19.     Ms. Murray's regular rate of pay was $31.28 per hour in 2014, $31.96 per hour in 2015, and $32.36 per hour from January 1, 2016 until her termination at all relevant times, and

her overtime rate of pay would therefore be $46.92 in 2014, $47.94 in 2105, and $48.54 per hour from January 1, 2016 until her termination.

20.      During the relevant time period, Ms. Murray worked a minimum of 32.5 hours of overtime in 2014, 71.75 hours of overtime in 2015, and 533.5 hours of overtime from January 1, 2016 until July 13, 2017 at Cambridge at the direction of Mr. Jaegle and Mr. Eldridge, either implicitly or explicitly, as a required component of her position as an administrative assistant.

21.      Ms. Murray was therefore denied $30,860.69 in overtime pay to which she was entitled under the provisions of the FLSA.

22.      Defendants willfully, intentionally, and in bad faith violated the provisions of the FLSA by misclassifying Ms. Murray as exempt under the FLSA and failing to pay her the overtime compensation to which she was entitled.

23.      As a direct and proximate cause of Defendants' refusal to pay Ms. Murray the overtime to which she was entitled under the FLSA, Ms. Murray has suffered compensatory damages of lost wages.

24.      As a direct and proximate cause of Defendants' actions, Ms. Murray has also been forced to incur costs, including costs of litigation, attorney's fees, and extra costs.

## PRAYER

WHEREFORE, Plaintiff, JoAnn Murray, prays that the Court enter judgment against Defendants, Cambridge Holdings LLC, Randy S. Jaegle, and Benjamin R. Eldridge, Jr., and award Ms. Murray:

  a.  Compensatory damages for violation of the FLSA's overtime pay provisions in the amount of $30,860.69 in accordance with 29 U.S.C. § 216(b);

b.  Liquidated damages to be assessed against Defendants in the amount of $30,860.69 in accordance with 29 U.S.C. § 216(b);

c.  Attorney's fees and costs for this action in accordance with 29 U.S.C. § 216(b); and

d.  Such other and further relief the Court deems just and proper.

## COUNT II

**(Retaliation in Violation of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3))**

25.     Ms. Murray incorporates the allegations contained in paragraphs 1– 24 above as though fully set forth herein.

26.     Under Section 215(a)(3) of the FLSA it is unlawful for any person to discharge or in any manner discriminate against any employee because such employee made a complaint concerning FLSA violations.

27.     On November 10, 2015, Ms. Murray met with Mr. Jaegle and John Bronder, the Director of Human Resources for Cambridge, concerning her request for a pay increase, her request for overtime pay, and the significant emotional distress caused by Cambridge's failure to pay the overtime she was due.

28.     In that meeting, Mr. Jaegle refused to pay Ms. Murray overtime and instead offered a "loan agreement" in which $27,000 would be distributed to her on a monthly basis over a three (3) year period, which she would need to pay back if she quit or was fired in the intervening three (3) years. Defendants also insisted that this "loan agreement" be kept secret allegedly to avoid any tax repercussions.

29.     Left with no other choice, Ms. Murray executed a promissory note on December 1, 2015, and, at the direction of Mr. Jaegle and Mr. Bronder, gave the executed "loan agreement" to Mr. Eldridge to hold.

30.     After she executed the "loan agreement," Ms. Murray was repeatedly and continuously harassed by Cambridge Chief Financial Officer Christine Channell.  Ms. Channell made harassing statements concerning this "loan" for the remainder of the time Ms. Murray was employed by Cambridge, and made it clear that she believed Ms. Murray did not deserve any additional pay for the overtime she worked and that she was expected to work unpaid overtime.

31.     On December 16, 2016, Ms. Murray spoke to Mr. Eldridge and she again raised the issue of her unpaid overtime and the constant harassment by Ms. Channell concerning the "loan" she had received instead of overtime pay.  In that conversation, Ms. Murray further stated that she would not work unpaid overtime moving forward.  Ms. Murray also requested that Mr. Eldridge not relay her complaints about Ms. Channell's harassing behavior to her or Cambridge management fearing escalated retaliation.

32.     In contravention of this request, Mr. Eldridge immediately informed Mr. Andrew Czekaj, Chairman of Cambridge, about Ms. Murray's complaints and Mr. Czekaj then informed Ms. Channell.

33.     The next morning, Ms. Channell called Ms. Murray into her office to confront her about her complaints.  Over the ensuing weeks, Ms. Channell made numerous comments to Ms. Murray indicating that her request for overtime pay and refusal to work further unpaid overtime angered the officers of Cambridge and that Mr. Czekaj now "had it out for her."

34.     On January 26, 2017, Ms. Murray attended a meeting with John Bronder, Sue Smith (representing Ms. Channell), and Randy Jaegle at which Ms. Murray raised the issues of the sheer number of hours she was expected to work to accomplish the tasks assigned to her by executives without being paid overtime to complete said tasks.  Mr. Jaegle became enraged, and

yelled at Ms. Murray loudly enough to be heard outside of the conference room, and her pleas to no longer work unpaid overtime were again refused.

35.     On March 29, 2017, Ms. Murray emailed Mr. Jaegle and informed him that she was unable to complete all of the tasks assigned to her within normal working hours, and would have to work overtime in order to complete her work.  Mr. Jaegle responded by stating that she would have to complete her work despite not receiving overtime pay as that was all a part of her job and expected.

36.     On April 2, 2017, Ms. Murray discovered that Cambridge and its officers had placed an ad on Indeed.com advertising an opening for her job.

37.     On May 12, 2017, Cambridge and its officers announced that a new administrative assistant, Bethany Sobczak was hired.

38.     Ms. Murray was expected to train Ms. Sobczak and over the last two months of Ms. Murray's employment with Cambridge, Ms. Sobczak gradually assumed Ms. Murray's duties.

39.     On May 16, 2017, the daughter of Cambridge's Chairman, Katherine Freehof, reprimanded Ms. Murray for refusing to work unpaid overtime, and told her that unpaid overtime is part of her job and she was expected to work those hours without complaint.

40.     On June 19, 2017, Ms. Murray was removed from her office, despite having her own office for the preceding 13 or 14 years, and was moved into a conference room as punishment for requesting overtime pay and refusing to work the hours of unpaid overtime she was expected to.

41.     On July 13, 2017, Ms. Murray was terminated because of her internal complaints regarding her extensive unpaid overtime and eventual refusal to work further unpaid overtime.

42.    As a direct and proximate result of the willful, intentional, and in bad faith retaliation against Ms. Murray by Defendants Cambridge, Mr. Jaegle, and Mr. Eldridge, Ms. Murray suffered compensatory damages of $300,000 for front pay, back pay, reputational damages, physical and emotional harm, and pain and suffering.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, JoAnn Murray, prays that the Court enter judgment against Defendants, Cambridge Holdings LLC, Randy S. Jaegle, and Mr. Eldridge, and award Ms. Murray:

a.  Compensatory and liquidated damages in an amount not less than $300,000 for back pay, front pay, physical and emotional harm, pain and suffering, and reputational harm in accordance with 29 U.S.C. § 216(b);

b.  Costs and other disbursements of this suit, including, without limitation, reasonable attorneys' fees in accordance with 29 U.S.C. § 216(b); and

c.  Such other and further relief the Court deems just and proper.


Respectfully submitted,


_____/s_____
Nicholas Hantzes, VA Bar 23967
Michael D. Hall, VA Bar 85481
1749 Old Meadow Road, Suite 308
McLean, Virginia  22102
Tel: (703) 378-5000
Fax: (703) 448-4436
nhantzes@hantzeslaw.com
mhall@hantzeslaw.com
*Counsel for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff JoAnn Murray demands a trial by jury for all claims.

_____/s_____
Nicholas Hantzes, VSB 23967
Michael Hall, VSB 85481
HANTZES & ASSOCIATES
1749 Old Meadow Road,  Suite 308
McLean, Virginia 22102
Tel: (703) 378-5000
Fax: (703) 448-4434
nhantzes@hantzeslaw.com
mhall@hantzeslaw.com
*Counsel for Plaintiff*
